**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

SCHACHTLER STONE PRODUCTS, LLC,
SHACHTLER FAMILY TRUST, ERIC T.
SCHACHTLER and PJK PROPERTIES, LLC,

|                          |                           |
|--------------------------|---------------------------|
| Plaintiffs,              | 6:21-cv-001100 (AMN/MJK)  |

v.

TOWN OF MARSHALL, TOWN BOARD OF
THE TOWN OF MARSHALL, ZONING BOARD
OF APPEALS OF THE TOWN OF MARSHALL,
and DANIEL J. FORD,

Defendants.

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOGEL & BROWN, P.C.** | **MICHAEL A. FOGEL** |
| 120 Madison Street | |
| Syracuse, New York 13057 | |
| *Attorneys for Plaintiffs Schachtler Stone* | |
| *Products, LLC, Schachtler Family Trust,* | |
| *Eric T. Schachtler and PJK Properties, LLC* | |
| | |
| **FITZGERALD MORRIS BAKER FIRTH, P.C.** | **JOHN D. ASPLAND, ESQ.** |
| 68 Warren Street | **COREY A. RUGGIERO, ESQ.** |
| Glens Falls, NY 12801 | |
| *Attorneys for Defendants Town of Marshall,* | |
| *Town Board of the Town of Marshall, Zoning* | |
| *Board of Appeals of the Town of Marshall* | |
| *and Daniel J. Ford* | |

**Hon. Anne M. Nardacci, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

On July 7, 2021, Plaintiffs Schachtler Stone Products, LLC ("Schachtler Stone"),

Schachtler Family Trust (the "Family Trust"), Eric T. Schachtler, and PJK Properties, LLC

(collectively, "Plaintiffs") commenced this action in New York Supreme Court, Oneida County pursuant to 42 U.S.C. § 1983  ("§ 1983") and § 1985 ("§ 1985") against Defendants Daniel J. Ford ("Defendant Ford"), the Town Board of the Town of Marshall (the "Town Board"), the Town of Marshall (the "Town"), and the Zoning Board of Appeals of the Town of Marshall (the "ZBA") (collectively, the "Defendants"), asserting violations of their constitutional rights to due process and equal protection based on the alleged hinderance of Plaintiffs' mining activities.  Dkt. No. 2.  On October 5, 2021, Defendants filed a Notice of Removal to the Northern District of New York.  Dkt. No. 1.[1]  On August 21, 2023, Plaintiffs filed an Amended Complaint.  Dkt. No. 31.  Now pending before the Court is Defendants' motion to dismiss Plaintiffs' Amended Complaint.  Dkt. Nos. 39 (the "Motion").  For the reasons that follow, the motion is granted in part and denied in part.  Plaintiffs' claim based on substantive due process is dismissed in its entirety.  Plaintiffs' claim based on a "class of one" theory of equal protection is dismissed.  Plaintiffs' claim based on a selective enforcement theory of equal protection is dismissed against the Town Board and the ZBA.

## II.        BACKGROUND

The following facts are drawn from the Amended Complaint and the exhibits attached the Amended Complaint unless otherwise noted and are assumed to be true for purposes of ruling on the Motion.  *See Div. 1181 Amalg. Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (*per curiam*); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("On a motion to dismiss, a court may consider documents attached to the complaint as an exhibit") (quotation omitted).

Plaintiffs PJK Properties, LLC and the Family Trust own property located on Shanley Road

---

[1] On January 19, 2023, the case was reassigned to the undersigned.  Dkt. No. 17.

in the Town of Marshall, New York, which is located in Oneida County.  Dkt. No. 31 at ¶ 22.
Plaintiffs own and operate a quarry at the property (the "Schachtler Quarry").  *Id.*  Defendant
Ford, who is the Town's Code Enforcement Officer, owns property with a boundary approximately
500 feet from the Schachtler Quarry.  *Id.* at ¶ 39.  On April 10, 2013, the ZBA granted Plaintiffs a
Special Use Permit ("SUP"), which was required by the Town's zoning ordinance to conduct
mining activities at the Schachtler Quarry.  Dkt. No. 31 Exhibit A at 4-5.[2]  After obtaining the
Town's approval, Plaintiffs sought approval from New York State.  On October 19, 2018, the New
York State Department of Environment Conservation ("DEC") granted Plaintiffs a Mining Permit
after conducting an environmental review pursuant to state law.  Dkt. No. 31 at ¶ 25.  During the
required environmental review, Plaintiff's application for the DEC Mining Permit was subject to
public comment, and Defendant Ford provided comment.  *Id.* at ¶ 28.  After obtaining the SUP
and the DEC Mining Permit, Plaintiffs were free to mine at the Schachtler Quarry, and Plaintiffs
incurred expenses to prepare their mining operation.  *Id.* at ¶¶ 24, 30, 31.

  In April 2019, Plaintiffs applied for a modification of their DEC Mining Permit to allow
blasting as an extraction method.  *Id.* at ¶ 32.  In response to Plaintiffs' modification application,
the DEC conducted another environmental review which included another opportunity for public
comment.  *Id.* at ¶ 33.  The Town did not comment on the application, and indeed, participated in
the environmental review.  *Id.* at ¶ 34.  Plaintiffs allege Defendant Ford requested additional time
to provide comment during the environmental review, delaying the ultimate determination of the
application by the DEC.  *Id.* at ¶ 37.  The Amended Complaint also alleges, directly and by
reference, that Defendant Ford sent letters to both the Town and the DEC expressing his opposition

---

[2] Where it exists, citations to docket entries utilize the pagination generation by CM/ECF, the
Court's electronic filing system.  Where such pagination does not exist, citations utilize the docket
entry's internal page numbers.

to mining at the Schachtler Quarry. *Id.* at ¶¶ 46, 47.[3]  On February 6, 2020, the DEC approved the modification application. *Id.* at ¶ 38.

After receiving approval for the modification, Plaintiffs sent a notice to the Schachtler Quarry's neighboring property owners, including Defendant Ford. *Id.* at ¶ 39.  Shortly after receiving notice, the Amended Complaint alleges Defendants took actions that hindered and prevented Plaintiffs' mining activities at the Schachtler Quarry. *Id.* at ¶ 3.  First, the Amended Complaint alleges Defendant Ford issued a Notice of Violation, dated April 9, 2020, with the goal of halting mining activities at the Schachtler Quarry. *Id.* at ¶ 40.  Second, Plaintiffs allege Defendant Ford issued a Stop Work Order, dated April 11, 2020, which threatened Plaintiffs with civil and criminal penalties and imprisonment. *Id.* at ¶ 41.  Third, the Amended Complaint alleges Defendant Ford issued a Certification, dated April 30, 2020, in response to Plaintiffs' appeal of the Notice of Violation and Stop Work Order. *Id.* at ¶ 43.  Finally, Plaintiffs allege the ZBA passed a resolution, dated October 14, 2020, which denied their appeal and upheld the enforcement actions issued by Defendant Ford, effectively prohibiting mining activity at the Schachtler Quarry (the "ZBA Resolution"). *Id.* at ¶ 66.  The Amended Complaint also alleges the Town shared counsel with Defendant Ford during these proceedings. *Id.* at ¶ 99.  The exhibits to the Amended Complaint clarify these actions were premised on the Town's notion that Plaintiffs did not hold a

---

[3] *See also Schactler Stone Products, LLC et al. v. Town of Marshall et al.*, Index No. EFCA2020-001052 (Sup. Ct. Oneida Cnty.), Dkt. 134 at ¶ 174.  While the docket entries of the state court proceeding are arguably referenced in the Amended Complaint and its attached exhibits, the court may consider documents that are "integral" to the pleadings even if they are neither physically attached to, nor incorporated by reference into, the pleadings. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).  Here, as evidenced by the Amended Complaint's heavy reliance on the Article 78 proceeding's "effect" in rendering the alleged enforcement actions invalid, the docket in that case is integral to the Plaintiffs' allegations. *Id.*  Regardless, "dockets sheets are public records of which the court c[an] take judicial notice" on a motion to dismiss. *Id.*

valid SUP.  Dkt. No. 31 Exhibit A at 25.  Plaintiffs allege each of these acts were "invalid," Dkt. No. 31 at ¶ 9, and constituted a "deliberate abuse of authority," *id*. at ¶ 5, by Defendants for the purpose of protecting Defendant Ford's "demonstrated financial interest" in preventing mining at the Schachtler Quarry, *id*. at ¶ 120.  Plaintiffs allege these actions have caused, and continue to cause, damage to Plaintiffs in the form of loss of sales and profits, interference with the Plaintiffs' mining business, and attorneys' fees incurred in opposing the actions.  *Id*.

Plaintiffs sued in the New York Supreme Court, Oneida County pursuant to the New York Civil Practice Law and Rules ("CPLR") Article 78, which permits challenges to official determinations by administrative agencies and public bodies (the "state court proceedings").  *Id*. at ¶ 4.  Plaintiffs also brought a claim for declaratory relief.  *Id*.  There, the court determined the Town and Defendant Ford's actions were baseless and a "deliberate abuse of authority" and rendered the Notice of Violation, Stop Work Order, Certification, and ZBA Resolution void.  *Id*. On appeal, the Appellate Division, Fourth Department affirmed the findings of the New York Supreme Court but vacated the trial court's granting of declaratory relief on procedural grounds. *Id*. at ¶ 70; *see also Schachtler Stone Products, LLC v. Town of Marshal*, 209 A.D.3d 1316, 1319 (4th Dept. 2022).

Plaintiffs allege that Defendants' actions violated their Fourteenth Amendment rights to substantive due process and equal protection and seek relief pursuant to § 1983.  Dkt. No. 31 at ¶¶ 74-127.  Plaintiffs also allege that Defendants conspired to violate their rights and cause injury and seek relief pursuant to § 1985.

## III.      STANDARD OF REVIEW

A motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) is properly granted "when the court lacks statutory or constitutional authority to adjudicate it."

*Cayuga Indian Nation of New York v. Vill. of Union Springs*, 293 F. Supp. 2d 183, 187 (N.D.N.Y. 2003) (citing *Luckett v. Bure*, 290 F.3d 493, 496 (2d Cir. 2002)).  To resolve such a motion, the court "accepts as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff."  *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003) (citing *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll.*, 128 F.3d 59, 63 (2d Cir. 1997)).  As relevant here, "federal question jurisdiction exists where 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'"  *Union Springs*, 293 F. Supp. 2d at 188 (quoting *Perpetual Sec. v. Tang*, 290 F.3d 132, 137 (2d Cir. 2002)).

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleadings, the court may consider documents that are "integral" to the pleadings even if they are neither physically attached to, nor incorporated by reference into, the pleadings.  *See Mangiafico*, 471 F.3d at 398 (quoting *Chambers*, 282 F.3d at 152-53).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," FED. R. CIV. P. 8(a)(2), with sufficient factual "heft to show that the pleader is entitled to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted).  Under this standard, a pleading's "[f]actual allegations must be enough to raise a right of relief above the

speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (citation omitted).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the . . . complaint must be dismissed."  *Id.* at 570.

## IV.     DISCUSSION

In support of the Motion, Defendants assert several defenses and arguments which vary in scope.  *See generally* Dkt. No. 39-2.  The Court addresses Defendants' arguments as follows: (1) those which would preclude the claims in their entirety, (2) those which would warrant the dismissal of claims against particular Defendants, and (3) those which address the merits of Plaintiffs' claims.

### A.  Standing

First, Defendants challenge Plaintiffs' standing to bring their claims, arguing that the Amended Complaint fails to demonstrate each Plaintiff's individual standing to bring this suit. Dkt. No. 39-2 at 14-19; Dkt. No. 45 at 2 (citing *Seife v. United States HHS*, 440 F. Supp. 3d 254, 272 (S.D.N.Y. 2020) and *Monaco v. Stone*, No. CV-98-3386, 2002 WL 32984617, at *18 (E.D.N.Y. Dec. 20, 2002)).  The Court "address[es] the issue of standing first because 'standing is jurisdictional under Article III' and is thus 'a threshold issue in all cases.'"  *Saba Capital Master Fund, LTD. V. Blackrock ESG Capital Allocation Trust*, 23-8104 (L), 2024 WL 3174971, at *1

(2d Cir. June 26, 2024) (quoting *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 117 (2d Cir. 1991)).

To establish standing, a plaintiff must demonstrate (1) an injury in fact that is concrete and particularized, (2) that the injury is traceable to the alleged actions of the defendant, and (3) redressability. *See Wang v. Bethlehem Cent. Sch. Dist.*, 1:21-cv-1023 (LEK/DJS), 2022 WL 3154142, at *4 (N.D.N.Y. Aug. 8, 2022) (citing *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013)). Plaintiffs must also establish they "ha[ve] been injured 'in a personal and individual way.'" *U.S. v. $179,710 in U.S. Currency*, 1:20-CV-1607 (GTS/TWD), 2021 WL 5961312, at *2 (N.D.N.Y. Nov. 2, 2021) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992)). Defendants seemingly challenge whether Plaintiffs have alleged an injury in fact, whether that injury is traceable, and whether that injury is sufficiently individualized.[4] Specifically, Defendants argue Plaintiffs fail to identify "(1) which individually named Plaintiff allegedly suffered harm; (2) the nature of the harm suffered by each individually named Plaintiff; or (3) to which of the four individually named Defendants each alleged harm may be traceable and on what basis." Dkt. No. 39-2 at 17 (emphasis removed). However, the Court finds that Plaintiffs "allege facts that affirmatively and plausibly suggest that they [each] have standing to sue." *Step by Step, Inc. v. City of Ogdensburg*, 176 F. Supp. 3d 112, 123 n.3 (N.D.N.Y. 2016) (citation omitted).

First, it is indisputable that Plaintiffs have alleged the general *existence* of "an injury in fact that is concrete and particularized." *Wang*, 2022 WL 3154142, at *4. The Amended Complaint details harm through "loss of sales and profits from the Schachtler Quarry, interference with Schachtler's mining business and attorneys' fees being incurred by Schachtler to address the

---

[4] Defendants do not appear to contest redressability. *See* Dkt. No. 39-2 at 8 (merely defining redressability without addressing whether the alleged injury could be remedied by the requested relief).

unlawful and unconstitutional actions by Defendants."  Dkt. No. 31 at ¶ 3.  Plaintiffs also allege that they incurred expenses preparing the property for mining operations.  *Id.* at ¶¶ 29, 30.  These types of harm are sufficient to establish Article III standing.  *See Sykes v. Mel Harris and Assocs.*, *LLC*, 757 F. Supp. 2d 413, 427-28 (S.D.N.Y. 2010) (finding the "incurring of legal costs" to defend against Defendant's actions constitutes sufficient injury); *Boyer Works USA, LLC v. Spin Master Products*, 21 Civ. 7468 (AKH), 2022 WL 1266090 at *4 (S.D.N.Y. Apr. 28, 2022) (finding injury in fact through a loss of business); *Anderson Group, LLC v. City of Saratoga Springs*, 805 F.3d 34, 46 (2d Cir. 2015) (finding expenditures on planned project constitute "injuries for standing purposes").

Second, the Amended Complaint explicitly ties those losses to the actions of each Defendant so that they are "traceable."  Plaintiffs allege Defendant Ford issued the Notice of Violation, the Stop Work Order, and the Certification, in response to which Plaintiffs were forced to incur expenses to defend themselves before the Zoning Board of Appeals and the New York Supreme Court, Oneida County.  Dkt. No. 31 ¶ 40, 41, 43.  Further, the Zoning Board of Appeals allegedly issued the 2020 ZBA Resolution which constituted the Town's final determination on the status of Plaintiffs' SUP and similarly forced Plaintiffs to incur expenses defending their right to mine.  *Id.* at ¶ 66.  The Amended Complaint also alleges that Defendant Ford and the Town purposefully delayed the approval of Plaintiffs' mining permit and caused lost business.  *Id.* at ¶ 37 (alleging delay caused by Defendant Ford's actions), ¶ 72 (alleging the Town's actions resulted in undue delay, which had a "negative impact on the business of the Schachtler Quarry").  Especially when considered with the Court's decision to dismiss the claims against the ZBA and the Town Board as redundant with those against the Town, the Amended Complaint sufficiently traces the alleged harms to each remaining Defendant.  *See supra* Section IV. C.

Arguably murkier on the face of the Amended Complaint, however, is whether Plaintiffs have identified *which of the Plaintiffs* experienced each of the harms sufficient to establish standing, and thus, whether Plaintiffs have each demonstrated "a personal and individual" injury. *$179,710 in U.S. Currency*, 2021 WL 5961312, at *2. Defendants take issue with the Amended Complaint's defining of "Schachtler" to repeatedly refer to the Plaintiffs collectively. Dkt. No. 39-2 at 17. But Defendants seemingly ignore the most obvious reading of the Amended Complaint: when using the collective "Schachtler," Plaintiffs are truly indicating that *each* of the Plaintiffs engaged in the described activity or experienced the described loss. For example, reading the Amended Complaint plainly, Plaintiffs' allegations that Defendants' activities caused "Schachtler" to incur attorneys' fees must be read to indicate that Schachter Stone Products, LLC, the Family Trust, Eric T. Shachtler, and PJK Properties, LLC all incurred attorneys' fees. Dkt. No. 31 at ¶ 3. Similarly, the Amended Complaint must be read to mean that *each* of the Plaintiffs "incurred expenses in connection with preparing the Property for mining." *Id.* at ¶ 30. While the Court is skeptical that every use of the collective "Schachtler" truly indicates that all the Plaintiffs engaged in the described activity in their individual capacity, this Court must read the Amended Complaint in the light most favorable to Plaintiffs. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). Regardless, on the allegations that matter for purposes of standing, the Court notes it is plausible that each of the Plaintiffs would have incurred legal fees defending themselves, or incurred expenses in reliance on the SUP, both of which are injuries in fact that can be traced to the Defendants. Thus, Plaintiffs have alleged sufficient facts to establish personal standing for each Plaintiff.[5]

---

[5] Defendants over-interpret the requirement that Plaintiffs must allege a personal and individual injury. "[S]tanding is not to be denied simply because many people suffer the same injury." *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 687

In any event, even if the Court were not required to take the collective "Schachtler" at face value, the Court finds sufficient individualized allegations and support in both the Amended Complaint and relevant supporting materials to avoid dismissal for each Plaintiff.  The Amended Complaint itself alleges the Schachtler Quarry "is located on property owned by the Schachtler Family Trust and PJK Properties, LLC," and that Eric T. Schachtler is the trustee of the Family Trust.  Dkt. No. 31 at ¶¶ 12, 22.  As owners of the property in question, the Family Trust and PJK Properties, LLC were the "direct subjects of the government action[s]" taking enforcement measures, and thus, "Plaintiffs have plausibly alleged the existence of sufficient injury to warrant judicial intervention" as to those three plaintiffs.  *Dean v. Town of Hempstead*, 527 F. Supp. 3d 347, 398 (E.D.N.Y. 2021).  Separately, "the denial of an entity's special use permit application . . . is an injury sufficient in itself to confer standing."  *Anderson Group, LLC v. City of Saratoga Springs*, 805 F.3d 34, 46 (2d Cir. 2015) (citing *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 46 n. 2 (2d Cir. 2002), *superseded by statute on other grounds*, ADA Amendments of 2008, Pub. L. No. 110–325, 122 Stat. 3553, *as recognized in McCulloch v. Town of Milan*, 559 Fed. Appx. 96, 98 (2d Cir. 2014) (unpublished decision)).  Here, the Court sees no reason to draw a distinction between "the denial" of an SUP and the alleged attempted invalidation of an SUP for purposes of establishing injury.  Therefore, the Amended Complaint alleges sufficiently individualized harm against the PJK Properties, LLC, the Family Trust, and Eric T.

---

(1972).  Here, though the Amended Complaint alleges Plaintiffs each suffered similar injuries (i.e., paying legal costs, incurring preparation expenses), those injuries are personal to each Plaintiff so long as they were experienced by each Plaintiff.  Instead, the doctrine of prudential standing warns against the inclusion of Plaintiffs "raising another person's legal rights" and asserting "generalized grievances."  *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 39 (2d Cir. 2015).  Read favorably, that is not the case for the Amended Complaint.

Schachtler as trustee.[6]

A review of the materials attached to and referenced within the Amended Complaint confirms Schachtler Stone Products, LLC, the remaining plaintiff, has standing to sue.  The New York Appellate Division, Fourth Department described the Plaintiffs collectively as the "owners or operators" of the mining operation at the Schachtler Quarry.  *See Schachtler Stone Products, LLC v. Town of Marshall*, 209 A.D.3d 1316, 1317 (4th Dept. 2022).  Additionally, the amended complaint in the related state court proceedings reveals that the DEC describes the mine at the Schachtler Quarry as the "Schachtler Stone Products Mine" and that the Notice of Violation issued by Defendant Ford was addressed to both Eric Schachtler and Schachtler Stone Products, LLC. *See Schactler Stone Products, LLC et al. v. Town of Marshall et al.*, Index No. EFCA2020-001052 (Sup. Ct. Oneida Cnty.), Dkt. 134 ¶¶ 47, 72.[7]  These details, coupled with the Court's duty to afford Plaintiffs every "favorable inference[]" from the Amended Complaint, compel the Court to conclude Schachtler Stone Products, LLC is the business entity which operates the mine at the Schachtler Quarry and experienced losses in profit and sales.  *See In re DDAVP Direct Purchaser Antitrust Litigation*, 585 F.3d 677, 693 (2d Cir. 2009).  Therefore, the pleadings and supporting materials sufficiently demonstrate that each of the Plaintiffs, whether through partial ownership of the property, operating the mine, or through holding the relevant SUP, experienced an injury in fact that is traceable and redressable.  Therefore, Plaintiffs have alleged facts sufficient to establish their standing at this stage.[8]

---

[6] The Court agrees with Plaintiffs that so long as both Eric T. Schachtler and the Family Trust are Plaintiffs, there is no capacity concern despite the Family Trust's inability to sue or be sued.  *See* Dkt. No. 42 at 5 (citing Federal Rule of Civil Procedure 17(b)).

[7] The Court may consider the docket entries in the state court proceedings.  *See supra* fn. 3.

[8] "While Plaintiffs' allegations can fairly be described as thin, dismissal under Rule 12(b)(1) at this early stage of the litigation is unwarranted."  *Shugars v. Masonite Corp.*, 3:22-cv-1237, 2023 WL 7280902, at *5 (N.D.N.Y. Nov. 3, 2023) (citing *Elhassa v. Hallmark Aviation Servs., L.P.*,

**B.  Res Judicata**

Defendants also assert that *res judicata* bars all of Plaintiffs' claims because, they argue, the claims could have been brought in the state court proceedings.  Dkt. No. 39-2 at 37.  In the state court proceedings, Plaintiffs brought both claims pursuant to Article 78 and a request for declaratory relief.  Dkt. No. 31 Exhibit A at 2 (the "State Court Decision").  Pursuant to recent guidance from the Second Circuit, *see Whitfield v. City of New York*, 96 F.4th 504 (2d Cir. 2024), this Court finds that the state court proceedings do not preclude Plaintiffs' claims, and thus, dismissal on grounds of *res judicata* is unwarranted.

In New York,[9] to justify preclusion on a motion to dismiss under the doctrine of *res judicata*, Defendants must establish several factors: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action."  *TAL Properties of Pomona, LLC v. Village of Pomona*, 22-1826, 2023 WL 2924571, at *2 (2d Cir. Apr. 13, 2023) (citing *Monahan v. New York City Dept. of Corrections*, 214 F.3d 275, 285 (2d Cir. 2000)).  The prior action must also result in a "final judgment on the merits."  *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) (detailing both New York and federal law).  Important here, where a portion of a decision has been vacated, the vacated decision

---

No. 21-cv-9768, 2022 WL 563264, *2 (S.D.N.Y. Feb. 24, 2022)).  In so finding, the Court notes that "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice."  *Shugars*, 2023 WL 7280902, at *5 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

[9] "In considering the preclusive effect of a state-court judgment in a subsequent federal lawsuit, federal courts look to the law of the state in which the earlier judgment was rendered."  *In re Aurora Commercial Corp.*, No. 21-1164, 2022 WL 1925939, at *1 (2d Cir. June 6, 2022) (citing *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985)).  However, "there is no discernible difference between federal and New York law concerning res judicata."  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

cannot provide the basis for preclusion under *res judicata* "as there is no 'final judgment on the merits.'" *Williams v. New York City Housing Authority*, 211 Fed. Appx. 22, 23 (2d Cir. 2006) (citation omitted); *see also Petrella v. Siegel*, 843 F.2d 87, 90 (2d Cir. 1988) (noting that the district court "may retain jurisdiction" following reversal of a decision relied upon for *res judicata* effect); *see also Ali-Hasan v. Constantino*, 2024 WL 1073639, at *3 (N.D.N.Y. Mar. 12, 2024) (finding that should plaintiff successfully appeal an adverse state court decision and have the decision vacated, plaintiff may attempt to reopen a federal court case which was precluded on *res judicata* grounds).

Rather than focus on these factors, the parties dispute the applicability of two exceptions to the application of *res judicata*.  Dkt. No. 39-2 at 40-44; Dkt. No. 42 at 14-17.  First, in general, Article 78 proceedings in New York do not preclude subsequent § 1983 actions (the "Article 78 Exception").  *See Whitfield*, 96 F.4th at 524 ("it can't reasonably be disputed that a judgment in a 'pure' Article 78 proceeding does not preclude, under the doctrine of *res judicata*, a later section 1983 damages claim based on the same set of facts").  However, whether this exception applies depends on whether the state court proceedings were "pure" or "hybrid" Article 78 proceedings. *See 5055 Northern Boulevard LLC v. Incorporated Village of Old Brookville*, 848 Fed. Appx. 49, 50 (2d Cir. 2021).  Second, when the prior action involved only a request for declaratory relief, the prior action does not warrant the application of *res judicata* to a subsequent action seeking other forms of relief (the "Declaratory Relief Exception").  *Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co.*, 600 F.3d 190, 196 (2d Cir. 2010)).

Primarily, the parties disagree on whether the state court proceeding at issue, which included a petition under Article 78 as well as an additional claim for a declaratory judgment and requested injunctive relief against Defendants, constitutes a "hybrid" proceeding which falls

outside the bounds of the Article 78 Exception to *res judicata*.  Dkt. 39-2 at 42; Dkt. No. 42 at 14-16; Dkt. 45 at 7.  *Whitfield* provides the operative framework: "judgment in a prior Article 78 proceeding will preclude future damages claims only if the petitioner sought relief that could not be awarded in a pure Article 78 proceeding *and* the state court took affirmative action demonstrating that it adjudicated the proceeding as a hybrid one."  96 F.4th at 527 (emphasis in original).

First, Defendants argue Plaintiffs sought "relief that could not be awarded in a pure Article 78 proceeding," *id.* at 527, by requesting injunctive relief and a declaratory judgment, Dkt. No. 31 Exhibit A at 2.  However, taking these forms of relief in turn, the request for injunctive relief does not preclude application of the Article 78 Exception.   In the state court proceedings, Plaintiffs requested that the court "stay, restrain and declare invalid" the Notice of Violation, Stop Work Order, and Certification.  Dkt. No. 31 Exhibit A at 13.  Indeed, the state court granted that request, ordering that respondents were "permanently restrained from regulating or prohibiting mining operations at the Schachtler Quarry."  Dkt. No. 31 Exhibit A at 44.  While such relief may fairly be described as injunctive, it is "relief that could [] be awarded in a pure Article 78 proceeding" and thus, cannot warrant preclusion.  *Whitfield*, 96 F.4th at 527.  The New York Civil Practice Law and Rules ("CPLR") § 7801 dictates Article 78 petitioners may obtain relief in the form of "mandamus, prohibition, and certiorari."  *See Whitfield*, 96 F.4th at 520.  A ruling on an Article 78 petition "may annul or confirm the [administrative] determination in whole or in part, or modify it, and *may direct or prohibit specified action by the respondent*."  CPLR § 7806 (emphasis added).  That Plaintiffs sought, and the state court granted, injunctive relief fits squarely within the forms of relief permitted by New York law pursuant to an Article 78 Claim.  Dkt. No. 31 Exhibit A at 44.  Indeed, binding precedent requires that "[a] New York plaintiff is not barred from seeking

15

damages in federal court, on civil rights claims by reason of a prior judgment on the same underlying facts in an Article 78 proceeding *requesting injunctive or affirmative relief.*"  *Davis v. Halpern*, 813 F.2d 37, 39 (2d Cir. 1987) (emphasis added).

Second, though the declaratory judgment cause of action in the state court proceedings, "sought relief that could not be awarded in a pure Article 78 proceeding," *see Whitfield*, 96 F.4th at 527, the request for a declaratory judgment does not warrant preclusion as that portion of the state court proceedings has been vacated on appeal.  *See Schachtler Stone Products, LLC v. Town of Marshall*, 209 A.D.3d 1316, 1319 (4th Dept. 2022).  Thus, there is no "final judgment on the merits" which addresses the declaratory relief action and the Court "may retain jurisdiction" over claims which could have been brought alongside the declaratory judgment action.  *Petrella*, 843 F.2d at 90.[10]

In the alternative, ignoring the effects of the appeal, the Declaratory Judgment Exception arguably moots the impact of the additional request for declaratory relief on the *Whitfield* analysis.  *See Duane Reade, Inc.*, 600 F.3d at 196.  Where the two relevant exceptions to *res judicata* overlap, meaning where a previous action brought claims under Article 78 and a request for declaratory relief, both exceptions have been given force by at least one court in this circuit.  *See Umhey v.*

---

[10] By arguing that the Appellate Division, Fourth Department's ruling does not matter because Plaintiffs "initiated" a declaratory judgment action, and thus, the Article 78 Exception should not apply, Defendants miss the forest for the trees.  Dkt. No. 45 at 8.  Even if the Article 78 Exception were defeated by the initiation of a declaratory judgment action, Defendants could not successfully demonstrate that the prior proceeding resulted in a "final judgment on the merits" (or any form of determination) for the declaratory judgment action.  *See Maharaj*, 128 F.3d at 97 (2d Cir.1997).  Therefore, *res judicata* would not apply.  Defendants also marshal case law for the inapplicable proposition that "the preclusive effect of a judgment is immediate, notwithstanding a pending appeal."  Dkt. No. 45 at 8 n.10 (citing *Palmer-Williams v. United States*, 699 Fed. Appx. 1, 3 (2d Cir. 2017)).  Here, there is no "pending appeal"; the appeal has been decided.  That it was decided after the initiation of this action has no effect on the current application of *res judicata*.  *See, e.g., Petrella*, 843 F.2d at 90.

*County of Orange, N.Y.*, 957 F. Supp 525, 530 (S.D.N.Y. 1997) (finding "despite the additional relief sought in the Article 78 proceeding, we conclude that the declaratory judgment exception should apply" and refusing to apply *res judicata*).  However, the Declaratory Judgment Exception applies only where the prior action sought solely a declaratory judgment and not "coercive relief." Dkt. No. 45 at 6 (citing *Duane Reade, Inc.*, 600 F.3d at 196).  Here, beyond a declaratory judgment, the only additional requested relief was that pursuant to an Article 78 proceeding.  Dkt. No. 31 Exhibit A.  Though "coercive relief" has not been clearly defined, and the relevant case law is sparse, Article 78 relief is generally not considered "coercive" because it "d[oes] not require the payment of any monies by the [Town], nor d[oes] it order the [Town] to change the law or even enjoin the county from enforcing the law against others."  *Umhey*, 957 F. Supp. at 530.  However, as Defendants note, injunctive relief *is* generally considered coercive.  *Id.*; *see also Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 194 (2d Cir. 2008); Dkt. No. 45 at 6 n.8.

Therefore, the Court is faced with a seemingly novel question: whether a prior action seeking injunctive relief through an Article 78 proceeding alongside a declaratory judgment action is subject to the Declaratory Judgment Exception.  Given the Court's determination that the Appellate Division's decision defeats Defendants' *res judicata* defense, the Court need not address this issue.  However, the Court makes two observations.  First, it is not convinced that the injunctive relief in the state court proceedings, which might normally be considered coercive, constitutes any more than the natural consequences which flow from the decidedly non-coercive forms of relief granted.  Given the State Court Decision's determination that any local conditions on Plaintiffs' mining operation are necessarily unlawful, it is inconceivable that Defendants could ever "regulat[e] or prohibit[] mining operations at the Schachtler Quarry" even absent the State Court Decision's explicit permanent restriction.  Dkt. No. 31 Exhibit A at 41.  This close alignment

17

between the forms of relief may warrant an application of the Declaratory Judgment Exception despite the technical presence of injunctive relief.  Second, in a context where both the Article 78 and the Declaratory Judgment Exceptions to *res judicata* might apply, prior requests for coercive relief are subject to unique limitations which might justify applying both exceptions.  Requests for coercive relief generally defeat the Declaratory Judgment Exception to *res judicata* because, in a more typical case, requesting any form of coercive relief means "[n]othing prevented plaintiff from joining his claims for damages . . . with his claim for equitable relief against them in the prior action."  *See Giannone*, 548 F.3d at 191 (quoting *Gross v. Tannen*, 251 A.D.2d 255 (1st Dep't 1998)).  That is not the case here, where Plaintiffs requested injunctive relief pursuant to Article 78, which limits a state court's ability to grant other forms of coercive relief such as damages.  *See Whitfield*, 96 F.4th at 520.  Therefore, to deprive Plaintiffs of the benefits of the Declaratory Judgment Exception due to a request for injunctive relief under Article 78 would be to prioritize form over substance.

Even if petitioners had sought "relief that could not be awarded in a pure Article 78 proceeding" that was capable of precluding Plaintiffs' claims, satisfying the first prong under *Whitfield*, the state court did not take "affirmative action demonstrating that it adjudicated the proceeding as a hybrid one."  96 F.4th at 527.  Therefore, preclusion would still be unwarranted under the second prong.  "New York law calls for doubts to be resolved against imposing claim preclusion . . . [and] claim preclusion should apply only if it is clear that the state court treated the prior proceeding as one in which plenary relief was available."  *Whitfield*, 96 F.4th at 529 (citing *Buechel v. Bain*, 97 N.Y.2d 295, 305 (2001)).  Far from making "clear" it treated the prior action as one in which plenary relief was available, here, the state court proceedings took several actions

that caution against the application of preclusion.

First, on appeal, the Appellate Division, Fourth Department vacated the portions of the State Court Decision which granted declaratory relief. *Schachtler Stone Products, LLC v. Town of Marshall*, 209 A.D.3d 1316, 1319 (4th Dept. 2022). In doing so, the state court found "this purported hybrid declaratory judgment action and CPLR article 78 proceeding 'is properly only a proceeding pursuant to CPLR article 78.'" *Id*. (citing *Matter of Barker Cent. School Dist. v. Niagara County Indus. Dev. Agency*, 62 A.D.3d 1239, 1240 (4th Dept. 2009)).[11] Therefore, the state court did not ultimately "treat[] the prior proceeding as one" in which Plaintiffs could have sought the damages they seek here. *Whitfield*, 96 F.4th at 529 (citation omitted).

The Whitfield framework also endorses a "holistic analysis of the state court record" to determine how the state court proceedings treated Plaintiffs' claims. *Id*. Even without considering the Appellate Division, Fourth Department's determination, that holistic analysis fails to offer convincing evidence the prior trial court proceeding "was *in fact adjudicated*" as a hybrid proceeding. *Id*. (emphasis added).

This Court takes note of three aspects of the state court proceeding's record which influence its analysis. First, and most importantly, the bulk of the trial court's discussion applied the standard of review associated with an Article 78 claim, which mandates "[c]ourts cannot interfere unless there is no rational basis for the exercise of discretion, or the action complained of is arbitrary and capricious." *See* Dkt. No. 31 Exhibit A at 39-40 (citing *Matter of Pell v. Bd. Of Educ.*, 34 N.Y.2d 222 (1974); *see Whitfield*, 96 F.4th at 529, n.26 (listing "the standard of review

---

[11] Under *Whitfield*, it is proper to examine the Appellate Division's assessment and view of the state court proceedings for purposes of analyzing preclusion. 96 F.4th at 530 ("[j]udging from the language of its opinion, the Appellate Division seems also to have understood the Supreme Court to have conducted a pure Article 78 proceeding").

applied by the state court" as a relevant consideration).[12]   The State Court Decision did not simply list the applicable Article 78 standard; it repeatedly framed its findings through the standard's terms.  *Id.* at 40 (finding the Town's arguments were "certainly not based on substantial evidence, or any evidence"), 43 (describing Defendants' actions as "arbitrary and capricious").   That the State Court Decision "took pains to clarify" an exacting standard of review, and that it applied that standard to reach the ultimate determinations, constitutes evidence that preclusion should not apply.  *Whitfield*, 96 F.4th at 531.  Second, however, the Court notes that the trial court describes the case as a "combined" Article 78 and declaratory judgment case.  Dkt. No. 31 Exhibit A at 2.  Third, and relatedly, the trial court describes the present Plaintiffs as "Plaintiffs-Petitioners."  *Id.* at 3.  These details, though formalistic, weigh in favor of preclusion, as they indicate the trial court approached the state court proceedings as "hybrid."  *Whitfield*, 96 F.4th at 530.  In total, the Court finds the evidence from the record (excluding the Appellate Division's decision) is mixed.  Therefore, it is not "clear" that the state court proceedings were treated as hybrid proceedings, and the Court should avoid imposing preclusion.  *Id.* at 529 (citing *Buechel*, 97 N.Y.2d at 305).

In sum, the Court finds the state court proceedings cannot justify the total preclusion of their claims here.  First, while the state court proceedings arguably sought relief unattainable in an Article 78 action in the form of a declaratory judgment, there was no "final judgment" on the declaratory judgment action capable of precluding Plaintiffs claims.  And besides, the declaratory judgment action is subject to its own exemption from preclusion which arguably applies and preserves the application of the Article 78 Exception.  Second, there can be no doubt that the appeal clarifies the state court proceedings were ultimately "treat[ed]" as a pure Article 78 action.  Even

---

[12] "It is proper to consider public documents on a motion to dismiss to determine whether claims are barred by prior litigation."  *Bal v. New York City Loft Bd.*, 2000 WL 890199, at *2 (S.D.N.Y. 2000) (citing *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir.1992)).

without considering the appeal, the trial court's treatment of the state court proceedings was mixed at best, which weighs against preclusion. Any one of these findings would, and do, prevent the application of *res judicata*. In so ruling, the Court is mindful that "since the doctrine of [*res judicata*] poses a danger of placing termination of the litigation ahead of the correct result, it is narrowly applied." *Chartier v. Marlin Mgmt., LLC*, 202 F.3d 89, 94 (2d Cir.2000).

### C. Defendant-Specific Arguments

Next, Defendants make a variety of arguments they assert warrant dismissal of the claims against some, or all, of the Defendants. First, Defendants argue "Plaintiffs have failed to allege any facts from which it may reasonably be inferred that [Defendant Ford] was personally involved in any constitutional deprivation," and thus, the causes of action against Defendant Ford "must be dismissed as a matter of law." Dkt. No. 39-2 at 19.[13] In response, Plaintiffs primarily point to the findings of the State Court Decision.[14] Dkt. No. 42 at 8-9. But Plaintiffs need not rely on the State Court Decision; the Amended Complaint itself alleges Defendant Ford's personal involvement in the alleged constitutional deprivation.

The Amended Complaint alleges "CEO Ford issued the . . . Notice of violation in an effort to prohibit Schachtler from mining at the Schachtler Quarry." Dkt. No. 31 at ¶ 40. It goes on to allege that Defendant Ford also issued both the Stop Work Order and the Certification at issue. *Id.* at ¶ ¶ 41, 43. Therefore, Plaintiffs have alleged Defendant Ford was directly involved in three of the four actions central to their claims of unconstitutional treatment.

Second, The Town Board and the ZBA argue that they are "non-suable administrative arms

---

[13] Plaintiffs sue Defendant Ford in his individual capacity. *See* Dkt. No. 42 at 10.

[14] The Court may consider "documents incorporated within the complaint by reference." *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002). Here, Plaintiffs not only reference the court's findings in the State Court Decision but attach a copy of the decision to the Amended Complaint.

and/or departments of the Town [of Marshall]," and therefore, are inappropriately named as defendants.  Dkt. No. 39-2 at 21.  In their opposition to the Motion, Plaintiffs fail to address this argument.  Dkt. No. 42.  "In the Northern District, where a plaintiff . . . fails to oppose . . . arguments by a defendant in its motion to dismiss, 'the movant's burden is lightened such that, in order to succeed, the movant need only show facial merit in support of its motion.'"  *Baldwin v. United States*, No. 1:20-CV-214 (GLS/CFH), 2021 WL 431145, at *2 (N.D.N.Y. Feb. 8, 2021) (quoting *Breezee v. Colvin*, No. 5:14-CV-1114 GTS, 2015 WL 5725083, at *2 (N.D.N.Y. Sept. 28, 2015)); *see also Wilson v. Cnty. of Ulster*, 1:20-CV-00104, 2022 WL 813958, at *2 (N.D.N.Y. Mar. 17, 2022).  Defendants have met this burden.

"Under New York law,[15] departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued."  *Town and Country Adult Living, Inc. v. Village/Town of Mount Kisco*, 17-CV-8586 (CS), 2019 WL 1368560, at *13 (S.D.N.Y. Mar. 26, 2019) (citing *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002)); *see also Baker v. Willett*, 42 F.Supp.2d 192, 198 (N.D.N.Y. 1999) (dismissing claims against the Warren County Sheriff's Department as "redundant" with claims against Warren County).  "The only proper defendant in a lawsuit against an agency of a municipality is the municipality itself, not the agency through which the municipality acted."  *Omnipoint Comms., Inc. v. Town of LaGrange*, 658 F. Supp. 2d 539, 552 (S.D.N.Y. 2009) (collecting cases).  Accordingly, Plaintiffs' claims against the Town Board and the ZBA are dismissed as redundant with those against the Town.  *See Crown Castle Fiber LLC v. Town of Oyster Bay*, 21-cv-6305, 2024 WL 1051171, at *1 n.1 (E.D.N.Y. Jan. 19, 2024)

---

[15] An entity is suable in federal court only if it would be suable under the laws of the state where it was created.  *See* FRCP 17(b).

(dismissing claims against the relevant town board and zoning board of appeals as redundant).

Finally, Defendants argue the Amended Complaint indulges in "impermissible group pleading by failing to differentiate between the Town Defendants" and thus "must be dismissed in its entirety." Dkt. No. 39-2 at 24. The Court finds Defendants overstate the Amended Complaint's deficiencies, especially considering the Court's decision to dismiss the claims against the ZBA and the Town Board.

While the Amended Complaint does frequently refer to Defendants collectively, it more than sufficiently alleges the two remaining Defendants, Defendant Ford and the Town, were "involved in the alleged constitutional deprivations, and how they were involved." *Little v. Soulia*, 9:19-CV-0263 (TJM/TWD), 2019 WL 13378467, at *10 (N.D.N.Y. Apr. 17, 2019). For example, the Amended Complaint specifically alleges that Defendant Ford (1) issued the Notice of Violation, Stop Work Order and Certification, and (2) asked for more time to comment on the modification of the DEC permit to "delay and interfere with Schachtler's rights." Dkt. No. 31 at ¶¶ 37, 40, 41, 43. And the Amended Complaint alleges the Town (1) issued the 2020 ZBA Resolution, (2) hired a conflicted attorney to enforce the Stop Work Order, and (3) failed to provide Plaintiffs with notice of special ZBA meetings on October 5, 6, 7, and 10, 2020. *Id.* at ¶¶ 44, 61-66. As such, the Amended Complaint adequately informs the remaining Defendants of the claims against them.

### D. Official Policy or Custom

Defendants also argue that Plaintiffs fail to state claims against the Town by "fail[ing] to allege any facts plausibly suggesting the existence of any relevant Town policy or custom which caused Plaintiff to suffer any constitutional deprivation." Dkt. No. 39-2 at 22. In their opposition, Plaintiffs argue that for purposes of the Town's liability, they have properly alleged "a course of action tailored to a particular situation" which constitutes a "policy" of the Town. Dkt. No. 42 at

12. The Court agrees with Plaintiffs.

Municipalities are not liable under § 1983 "unless action pursuant to official municipal policy of some nature causes a constitutional tort." *Glassman v. City of New York*, 557 Fed. Appx. 97, 98 (2d Cir. 2014) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). An official municipal policy can take several forms, including "1) a formal policy, officially promulgated by the municipality . . .; 2) action taken by the official responsible for establishing policy with respect to a particular issue . . .; 3) unlawful practices by subordinate officials so permanent and widespread as to practically have the force of law . . .; or 4) a failure to train or supervise that amounts to 'deliberate indifference' to the rights of those with whom the municipality's employees interact." *Smith v. City of Syracuse*, 5:19-cv-00997 (BKS/ATB), 2020 WL 1937411, at *3 (N.D.N.Y. Apr. 21, 2020) (citations omitted); *see also Porter v. Town of Fine*, 8:18-CV-1289, 2022 WL 4094516, at *31 (N.D.N.Y. Sep. 6, 2022).

Read plainly, the Amended Complaint alleges liability under the second form of an official policy: "a decision to adopt a particular course of action . . . directed by those who establish governmental policy." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 470 (1986). Put differently, "[w]hen 'an official has final authority over significant matters involving the exercise of discretion, the choices he makes represent government policy.'" *Nagle v. Marron*, 663 F.3d 100, 116 (2d Cir. 2011) (quoting *Clue v. Johnson*, 179 F.3d 57, 62 (2d Cir. 1999)). Therefore, "municipal liability may be imposed for a single decision by municipal policymakers." *Pembaur*, 475 U.S. at 480. However, the official or entity must "ha[ve] final policymaking authority in the particular area involved . . . [i]t does not suffice . . . that the official has been granted discretion in the performance of his duties," to subject the government to § 1983 liability. *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000) (citing *Jett v. Dallas Independent School District*, 491 U.S. 701, 737 (1989)). Whether

24

an official has final policymaking authority "is to be answered on the basis of state law." *Id.* (citing *McMillian v. Monroe County*, 520 U.S. 781, 786 (1997)).

Here, there can be no doubt that the Town Board and the ZBA, whose conduct is attributable to the Town, have final policymaking authority regarding the enforcement of the Town's land use and zoning laws and regulations.  Indeed, the April 9, 2020, Notice of Violation sent by Defendant Ford explicitly states "the [ZBA] will be reviewing violations and *making the final decision*."  Dkt. No. 31 Exhibit A at 39.  And the Amended Complaint describes the Town Board as the "legislative body" for the Town.  Dkt. No. 31 at ¶ 15; *see also Weinberg v. Village of Clayton, New York*, 5:17-cv-00021 (BKS/ATB), 2018 WL 5777292, at *9 (N.D.N.Y. Nov. 2, 2018) (finding that a village's Board has final policymaking authority as to the enforcement of village code); *Clark v. City of Oswego*, No. 03-cv-202, 2007 WL 925724, at *8 (N.D.N.Y. Mar. 26, 2007) (finding a city's "legislative body" has final policymaking authority for the city).  Therefore, for purposes of establishing municipal liability under § 1983, the Town Board and the ZBA are final policymakers capable of imputing liability on the Town.  As such, their actions, including the issuance of the 2020 ZBA Resolution and opposition to the Schachtler Quarry at various Town meetings on baseless grounds, constitutes official policy.

Defendants' arguments to the contrary miss the mark.  First, in their opening brief, Defendants insist Plaintiffs wrongly seek liability against the Town on a theory of *respondeat superior* by alleging "a single instance of unconstitutional conduct by a mere employee of the municipality," presumably Defendant Ford.  Dkt. No. 39-2 at 22-23 (citing *Smith*, 2020 WL 1937411, at *3).[16]  In doing so, Defendants ignore that official policy can be established by the

_____

[16] Defendants also misconstrue *Smith*, 2020 WL 1937411.  There, the Court did not address the possibility of establishing an official policy through the acts of a final policymaker.  Instead, in asserting "a 'custom or policy cannot be shown by pointing to a single instance of unconstitutional

Defendants' actions so long as the Defendants hold final policymaking authority, and instead, attempt to inappropriately narrow the scope of Plaintiffs' allegations to the actions taken by Defendant Ford.  *See, e.g., Pembaur*, 475 U.S. at 480.  In their reply, Defendants acknowledge Plaintiffs "appear to argue" Defendants were final policymakers for purposes of establishing municipal liability.  Dkt. No. 45 at 14.

Pivoting, Defendants put forward a new argument: that the ZBA's "ratification" of Defendant Ford's acts is insufficient because Plaintiffs do not allege "repeated unconstitutional acts[.]"  *Id.* (citing *King v. Vill. of Brewster*, 22 CV 8105 (VB), 2023 WL 2692360, at *8 (S.D.N.Y. Mar. 29, 2023) and *Donovan v. Norwich City Sch. Dist.*, 3:19-CV-1638, 2022 WL 623904, at *14 (N.D.N.Y. Mar. 3, 2022)).  But Plaintiffs do not rely on a theory of ratification for establishing liability against the Town.  Instead, the Amended Complaint alleges that the ZBA itself, by issuing the 2020 ZBA Resolution, directly deprived Plaintiffs of their constitutional rights.  *See* Dkt. No. 31 at ¶ 66 (alleging the ZBA itself "issued the . . . [r]esolution").  Indeed, Defendants appear to conflate final policymaker liability with ratification, which instead involves "senior personnel [with] knowledge of a pattern of constitutionally offensive acts by their subordinates."  *Donovan*, 2022 WL 623904, at *14 (quoting *Turpin v. Mailet*, 619 F.2d 196, 201 (2d Cir. 1980) (assessing whether a police chief ratified the acts of his subordinates)).  Here, as alleged, the Town did not just have knowledge of Defendants Ford's allegedly unconstitutional acts, but instead, acted directly through its administrative bodies.  Dkt. No. 31 at ¶ 66.

Even if Plaintiffs did rely on a theory of ratification, the Amended Complaint is sufficient. Plaintiffs allege the Town endorsed and furthered Defendant Ford's acts through the hiring of

---

conduct by a mere employee,'" the court was describing the limits of claims alleging an official policy "based on inadequate training."  *Id.* at *3 (citation omitted).

Defendant Ford's attorney to represent the Town, instituting inadequate notice procedures for relevant meetings, and through the issuance of the 2020 ZBA Resolution.  Dkt. No. 31 at ¶¶ 44, 55, 61-67.  As alleged, the Town was aware of Defendant Ford's conflict of interest when it took each of these actions, and it was aware that the actions were premised on a faulty theory that the SUP was invalid.  *Id.*; Dkt. No. 31 Exhibit A at 28-29.  These allegations detail not just "inaction" but "tacit encouragement" of Defendant Ford's pattern of allegedly baseless enforcement actions. *See Wilson v. County of Ulster*, 2022 WL 813958, at *15 (N.D.N.Y. Mar. 17, 2022) (quoting *Turpin*, 619 F.2d at 201).  Therefore, there is more than a "single instance of ratification," Dkt. No. 45 at 15 (quoting *Donovan*, 2022 WL 623904, at *14), and the Town's ratification of Defendant Ford's actions constitutes official policy.

### E.  Plaintiffs' Conspiracy Claims

Moving on to the merits of the claims asserted by Plaintiffs, the claims of conspiracy pursuant to 42 U.S.C. § 1985(3) are dismissed.  To state a cause of action under 42 U.S.C. § 1985(3), Plaintiffs must allege: "1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."  *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (citing *Britt v. Garcia*, 457 F.3d 264, 269 n. 4 (2d Cir.2006)).  "The conspiracy must also be "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus."  *Id*. (citing *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir.2007)).  Here, even read in a light most favorable to Plaintiffs, the Amended Complaint alleges no such "class-based" animus.  Instead, the Amended Complaint seems to suggest that the Defendants' alleged conspiracy was motivated by Defendant

Ford's "demonstrated financial interest in halting mine operations." *See* Dkt. No. 31 at ¶ 141.  The allegations reveal no purported class based on "the type of inherited or immutable characteristics sufficient to satisfy the class-based animus requirement." *Dolan*, 794 F.3d at 296.  As such, Plaintiffs' claim must be dismissed; to hold otherwise would enable "innumerable tort plaintiffs . . . to assert causes of action under § 1985(3) by simply defining the aggrieved class as those seeking to engage in the activity the defendant has interfered with." *Town of W. Hartford v. Operation Rescue*, 991 F.2d 1039, 1046 (2d Cir.1993); *see also Griffin v. Breckenridge*, 403 U.S. 88, 101 (1971) (finding § 1985(3) was not "intended to apply to all tortious, conspiratorial interferences with the rights of others" but instead requires "invidiously discriminatory motivation").

### F.  Substantive Due Process

Next, Defendants argue "Plaintiff's [*sic*] Fourteenth Amendment substantive due process claim . . . must be dismissed" because "the same is subsumed by and/or duplicative of their Fourteenth Amendment equal protection claim." Dkt. No. 39-2 at 25.  It is "well established" that "[w]here another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process." *Hu v. City of New York*, 927 F.3d 81, 104 (2d Cir. 2019) (citing *Southerland v. City of New York*, 680 F.3d 127, 142-42 (2d Cir. 2012) (citations omitted)); *see also Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005) (holding that the plaintiff's substantive due process claim was subsumed by the alleged First Amendment and equal protection violations); *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1351 n.8 (2d Cir. 1994) (dismissing a plaintiff's substantive Due Process claim because it was duplicative of the plaintiff's equal protection claim); *Dayes v. Watertown City School Dist.*, 5:20-cv-964 (GLS/ML), 2021 WL 4407385, at *9 (N.D.N.Y. Sep. 27, 2021).  Indeed, the Second Circuit has held that where a

substantive due process claim is based on "enforcement actions" which allegedly constitute "systematic and intentional harassment in an attempt to drive the plaintiff out of business," the substantive due process claim must be dismissed in favor of an equal protection claim based on the same set of facts. *Hu*, 927 F.3d at 103. Moreover, the substantive due process claim must be dismissed on subsummation grounds even if its twin equal protection claim is dismissed on the merits. *See 20 Dogwood LLC v. Village of Roslyn Harbor*, No. 23-930, 2024 WL 1597642, at *2 (2d Cir. Apr. 12, 2024) (summary order).

Here, Plaintiffs do not contest that their substantive due process and equal protection claims are based on the same set of facts, Dkt. No. 42 at 21-22, nor could they. At base, both claims rest on the same set of core allegations: that "[t]he Notice of Violation, Stop Work Order, Certification and 2020 ZBA Resolution," which were issued wrongfully, caused "the unconstitutional deprivation of Plaintiffs' rights" by delaying and hindering the mining activities at the Schachtler Quarry. Dkt. No. 31 at ¶ 73. Instead, Plaintiffs make a cursory argument that the subsummation rule does not apply "in the land use context" because there, claims for equal protection are "distinct claim[s] of selective enforcement." Dkt. No. 42 at 21-22. But binding precedent thwarts this interpretation of the rule: that an equal protection claim is based on "selective enforcement" is not sufficient to establish the claim is "distinct" from a simultaneous substantive due process claim. *Hu*, 927 F.3d at 104.

Moreover, Plaintiffs' cases do not support their interpretation of the rule in the land use context. In *Zahra v. Town of Southold*, 48 F.3d 674 (2d Cir. 1995), the substantive due process claim before the court was rooted in the town's withholding of an insulation inspection from a local property owner, whereas the equal protection claim was based on allegations that the town "selectively enforced the Town Code" against Plaintiff's other properties. *Id*. at 679, 683. And

that the New York Court of Appeals failed to consider the overlap between plaintiff's substantive due process and equal protection claim does not alter the binding authority demanding this Court engage with such considerations.  *See Bower Assoc. v. Town of Pleasant Val.*, 2 N.Y.3d 617 (2004). Finally, in *Missere v. Gross*, plaintiff's substantive due process claim was based solely on the failure of defendants to grant a variance and its decision that plaintiff's restaurant fell outside a particular zoning area.  826 F. Supp. 2d 542, 553-54 (S.D.N.Y. 2011).  In contrast, plaintiff's equal protection claim was based on additional facts regarding the building of a fence, the requirements for outdoor dining, and allegedly unfair inspections.  *Id.* at 562.  Therefore, Plaintiffs can point to no binding authority exempting their claims from subsummation, and their claim based on substantive due process must be dismissed.  The Court need not delve into whether Defendants' conduct is "conscience-shocking."  Dkt. No. 39-2 at 28 (citation omitted).

### G.  Plaintiffs' Equal Protection Claim

Finally, Defendants argue the Amended Complaint "fails to identify any comparators similarly situated to [Plaintiffs]" and thus "fails as a matter of law" to state an equal protection claim. Dkt. No. 39-2 at 30.  However, drawing all inferences in favor of Plaintiffs, this Court finds the Amended Complaint properly asserts an equal protection claim against the remaining Defendants.

"[T]he Equal Protection Clause 'is essentially a direction that all persons similarly situated should be treated alike.'"  *Bill & Ted's Riviera, Inc. v. Cuomo*, 494 F. Supp. 3d 238, 245 (N.D.N.Y. 2020) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  Relevant here, "'the equal protection guarantee ... extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials.'" *Id.* (citing *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001)); *see* Dkt. No.

31 at ¶ 126 (failing to allege class membership).  Plaintiffs may proceed under two theories: "1) selective enforcement, or (2) class of one." *Id.* (quotation omitted).  The Amended Complaint pursues liability through both theories. Dkt. No. 31 at ¶¶ 118, 126.

To plead selective enforcement, Plaintiffs must allege "that '(1) the [Plaintiffs], compared with others similarly situated, w[ere] selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the [Plaintiffs].'" *Hu*, 927 F.3d at 91 (quoting *Zahra*, 48 F.3d at 683); *see also Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004).  To satisfy the first prong, Plaintiffs must show their circumstances "bear a reasonably close resemblance" to the comparators, but they need not show their circumstances are "identical." *Hu*, 927 F.3d at 96 (citing *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014)).  "As a general rule, whether items are similarly situated is a factual issue that should be submitted to the jury." *Harlen Assocs. V. Inc. Village of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001); *see also Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) ("[w]hether two employees are similarly situated ordinarily presents a question of fact for the jury"); *Kirschner v. Zoning Bd. Of Appeals of Valley Stream*, 924 F. Supp. 385, 394 (E.D.N.Y. 1996) (question of whether parties are similarly situated is "classic" issue of fact precluding *summary judgment*, let alone a dismissal).

Here, the Court is satisfied that Plaintiffs have shown their circumstances are similar in "all material respects" to the proposed comparator, Williams Fence. *Hu*, 927 F.3d at 96.  The Amended Complaint alleges two key facts regarding Williams Fence: (1) that Williams Fence is a "business" subject to the Town of Marshall's authority, and (2) Williams Fence faces "continued neighborhood opposition." Dkt. No. 31 at ¶ 117.  Drawing all inferences in favor of Plaintiffs, the

Court infers that Williams Fence was similarly required to apply for and received permission from the Town to operate its business.  These facts are sufficient to establish Williams Fence faced materially similar circumstances to Plaintiffs.  The Amended Complaint suggests that even though both parties faced similar neighborhood opposition, and even though the Town was similarly responsible for permitting both businesses, only the Plaintiffs were arbitrarily deprived of their permit and faced invalid enforcement actions.  While far from thorough, the Amended Complaint "need not contain detailed factual allegations[.]"  *Hu*, 927 F.3d at 97 (quoting  *Matson v. Bd. of Educ. of City Sch. Dist. of New York*, 631 F.3d 57, 63 (2d Cir. 2011) (quotation omitted)).  "Discovery in this case may ultimately . . . render the resemblance between" Plaintiffs and Williams Fence less reasonably close, but "[a]t this early stage in the litigation . . . plaintiffs' failure to plead such fact-specific details should not bar their [selective enforcement] claims." *Id.* (quoting *Graham*, 230 F.3d at 40).[17]

The Amended Complaint also sufficiently alleges that the differential treatment was motivated by Defendants' "animus" and their "bad faith intent to injure" Plaintiffs.  *Id.* at 91.  The Amended Complaint directly states the Town "allowed CEO Ford, an individual with a demonstrated financial interest in halting mine operations, known public opposition and animosity toward the Schachtler Quarry, to take these unwarranted actions[.]"  Dkt. No. 31 at ¶ 6 (quoting the State Court Decision).  Indeed, the Amended Complaint repeatedly alleges Defendants' actions

---

[17] That Plaintiffs' allegations of neighborhood opposition are pled on information and belief is no matter because Plaintiffs identify a specific comparator in Williams Fence.  *See Lopez v. Advantage Plumbing & Mechanical Corp.*, 15-CV-4507, 2016 WL 1268274, at *4 (S.D.N.Y. Mar. 31, 2016) (finding allegations on information and belief about the particulars of a comparator are permitted at this stage so long as a specific comparator is identified) (citing *Barrett v. Forest Laboratories, Inc.*, 39 F.Supp.3d 407, 432 (S.D.N.Y. 2014)); *see also O'Connor v. New York State Dep't. of Fin. Servs.*, 1:21-cv-00828 (BKS/ATB), 2022 WL 3998099, at *5 (N.D.N.Y. Sep. 1, 2022) (citing the same standard).

were motivated by improper considerations of Defendant Ford's financial interest. *Id.* at ¶¶ 47 (alleging the attorney hired both by the Town and Defendant Ford sent a letter to DEC referencing "potential financial injury to property owned by CEO Ford"), 119, 120, 123, 125. These allegations are supported by the findings of the State Court Decision after a detailed review of the relevant documents. *See generally* Dkt. No. 31 Exhibit A. As such, Plaintiffs have pled a selective enforcement claim.

Less convincing, however, is Plaintiffs' attempt to plead a class of one equal protection claim. A class of one equal protection claim, unlike a selective enforcement claim, does not require a finding of Defendants' animus towards Plaintiffs. *Hu*, 927 F.3d at 94. However, to succeed, Plaintiffs must meet an "extremely high" similarity standard which requires proof that "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy." *Hu*, 927 F.3d at 94 (citing *Neilson v. D'Angelis*, 409 F.3d 100, 104-05 (2d Cir. 2005) *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008)). Put differently, Plaintiffs must show they are "*prima facie* identical" with Williams Fence. *Id.* The pleadings in the Amended Complaint, even when read in the context of the attached State Court Decision, cannot meet this burden. First, while the Amended Complaint alleges both Williams Fence and Plaintiffs faced "neighborhood opposition" it does not provide any details as to the degree, timing, or reasons for the opposition to Williams Fence. Dkt. No. 31 at ¶ 117. Without these details, the Court cannot conclude Williams Fence and Plaintiffs are "identical": the Town could have acted more leniently towards Williams Fence for a host of reasons, including less fervent opposition. The Amended Complaint also does not speak directly to the nature of the Town's authority over Williams Fence, such as whether Williams Fence's ability to conduct business was originally conditioned on

requirements like those relied upon by the Town (perhaps, in bad faith) in their attempt to halt mining at the Schachtler Quarry. *See* Dkt. No. 31 Exhibit A at 17. Given these shortcomings, the Court dismisses the class of one claim.

## V.        CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendants' motion to dismiss, Dkt. No. 39, is **GRANTED** to the extent it seeks to dismiss the claims against the Town Board of the Town of Marshall and the Zoning Board of Appeals; and the Court further

**ORDERS** that Defendants' motion to dismiss, Dkt. No. 39, is **GRANTED** to the extent it seeks to dismiss the claims made pursuant to § 1985 against all Defendants; and the Court further

**ORDERS** that Defendants' motion to dismiss, Dkt. No. 39, is **GRANTED** to the extent it seeks to dismiss Plaintiffs' claims based on substantive due process and a class of one theory of equal protection pursuant to § 1983; and the Court further

**ORDERS** that Defendants' motion to dismiss, Dkt. No. 39, is **DENIED** to the extent it seeks to dismiss Plaintiffs' claims based on a selective enforcement theory of equal protection pursuant to § 1983; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 3, 2024
        Albany, New York

Anne M. Nardacci
U.S. District Judge

34